# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAVIER ADDIEL PICADO-PEREZ,

Petitioner,

v.

RAYMOND HERNANDEZ,
MARKWAYNE MULLIN, TODD
BLANCHE, DEPARTMENT OF
HOMELAND SECURITY,
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW, and DALE
SCHMIDT,

Respondents.

Case No. 26-CV-1009-JPS

**ORDER**

## 1.      INTRODUCTION

Petitioner Javier Addiel Picado-Perez ("Petitioner") is currently in the legal custody of Immigration and Customs Enforcement ("ICE") at the Dodge County Jail in Juneau, Wisconsin, where Respondent Dale Schmidt is his physical custodian. ECF No. 1 at 1. Petitioner has named the Director of the ICE Field Office in Chicago, the Secretary of the Department of Homeland Security, the United States Attorney General, the Department of Homeland Security, and the Executive Office for Immigration Review as Respondents; the Court will hereafter refer to these officials as the "Federal Respondents." *Id*.

Petitioner argues that his continued detention is unlawful and petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Id*. at 2; 10–12. Petitioner seeks a writ of habeas corpus "requiring that Respondents schedule a bond hearing under 8 U.S.C. § 1226(a)" of the Immigration and

Nationality Act, 8 U.S.C. §§ 1101 et seq. ("INA"), at which time the "Government shall bear the burden of proving Petitioner's continued detention is justified." *Id.* at 12. "[I]f Respondents fail to provide him with a bond hearing," Petitioner asks the Court to order "his immediate release." *Id.*

Petitioner also seeks an order "[d]eclar[ing] that Petitioner's detention without a bond hearing violates the Due Process Clause of the Fifth and Fourteenth Amendments and 8 U.S.C. § 1226(a)" and that his "re-detention without an individualized assessment and opportunity to respond after being released on parole violates the Due Process Clause of the Fifth and Fourteenth Amendments and 8 C.F.R. § 212.5(e)(2)(i)." *Id.* Federal Respondents' response brief argues that the petition should be dismissed with prejudice.[1] ECF No. 10. Petitioner has filed a reply, ECF No. 11; thus, the matter is now fully briefed.

For the reasons set forth below, the Court will deny the petition for habeas corpus pursuant to § 2241 and dismiss this case. The petition's statutory claim will be denied with prejudice; the petition's due process claim will be denied without prejudice to the extent that Petitioner may have a due process claim materialize in the future related to his current detention.

## 2. FACTUAL AND PROCEDURAL BACKGROUND

Except where noted, the Court draws the following recitation of facts from the petition, ECF No. 1, as well as documents that Federal Respondents submitted, ECF Nos. 9, 9-1, 9-2, and the parties' briefs, ECF

---

[1]Petitioner's jail custodian, Dale Schmidt, joins the Federal Respondents' brief. ECF No. 10 at 2 n.2.

Nos. 10 and 11, to the extent those facts are undisputed and consistent with the petition. The Court provides additional legal context where necessary.

Petitioner is a Nicaraguan national who, fleeing government persecution, arrived in the United States in October 2022. ECF No. 1 at 5; *see also id*. at 3; ECF No. 10 at 3. Shortly after entering the country, he was apprehended by Customs and Border Patrol ("CBP") in Texas. ECF No. 1 at 1, 5; ECF No. 10 at 3. He was released and provided a Notice to Appear (Form I-862), charging him with entering the country without inspection and not being in possession of travel documents. ECF No. 9-1 at 1; *see* 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). He was placed in removal proceedings and received an initial immigration court date of April 27, 2026. ECF No. 9-1 at 1–2. Petitioner was released on parole for the purpose of pursuing his application for asylum but his parole expired in December 2022. *Id*. at 6; ECF No. 10 at 13.

In March 2024, Petitioner was involved in domestic incident, which led to a conviction for misdemeanor disorderly conduct following a jury trial in February 2026. ECF No. 1 at 5; *State of Wisconsin vs. Javier Addiel Picado*, Case No. 2024CF000172 (Dodge Cnty. Cir. Ct. 2024), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2024CF000172&countyNo=14&index=0&mode=details (last visited July 10, 2026) ("State Case"). As a result, he spent fifty days in Dodge County Jail starting on March 20, 2026. State Case, Mar. 6, 2026 docket entry.

Upon completion of his sentence in his State Case, he was transferred into ICE custody; according to the parties, this transfer occurred in April 2026. ECF No. 1 at 6; ECF No. 10 at 1. However, according to the documents submitted by the Government, this timeline is plainly incorrect; that is to

say, an ICE detainer was lodged in April 2026 but it was not until May 21, 2026 that he was actually taken into ICE custody. ECF No. 9-1 at 6.[2]

**3.      LAW & ANALYSIS**

A federal court may grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although federal law places substantial limits on the authority of district courts to review immigration matters, those limitations do not bar this Court's consideration of Petitioner's challenge to the statutory framework of the INA mandating his detention without a bond hearing. *Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *4 (E.D. Wis. Oct. 30, 2025). Federal law likewise does not forbid the Court from considering whether his due process rights have been violated in connection with his prolonged detention. *See Sosa-Vasquez v. Schmidt*, No. 26-CV-600-JPS, 2026 WL 1831614, at *8 (E.D. Wis. June 25, 2026) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The Court will address each argument in turn.

**3.1      Petitioner's Detention Does Not Violate the INA**

Petitioner's first argument is just the latest in a series of challenges to the Government's interpretation of 8 U.S.C. § 1225(b)(2)(A) of the INA so as to require mandatory detention of all noncitizens who were not admitted regardless of how long ago they entered the country. The Seventh Circuit has not reached a consensus on this question. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 858 (7th Cir. 2026). As Petitioner notes, several circuits have firmly rejected the Government's position. No. 11 at 2

---

[2]The Court's timeline is corroborated by Petitioner's acknowledgment that he was taken into ICE custody "after completing his sentence," ECF No. 1 at 1, which, if it started, as the record reflects, on March 20, 2026 and ran for fifty days, would not have concluded until early May 2026.

(citing *Barbosa Da Cunha v. Moniz*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); and *Hernandez Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026)). Two other circuits have decided in favor of the Government's position. *See Herrera Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).[3]

Judges within this District have also disagreed on this legal question. *Compare Ramirez Valverde v. Olson*, No. 25-cv-1502, ECF Nos. 21 and 22 (E.D. Wis. Oct. 29, 2025) (Conway, J.) (petition granted); *López de la Cruz v. Schmidt*, Nos. 25-cv-1562, ECF Nos. 18 and 19 (E.D. Wis. Nov. 19, 2025) (Adelman, J.) (petition granted); *Hernandez Herrera v. Olson*, No. 25-cv-1994, ECF Nos. 10 and 11 (E.D. Wis. Jan. 28, 2026) (Joseph, J.) (petition granted) with *Rojas*, 2025 WL 3033967 (Ludwig, J.) (pending appeal) (petition denied); *Ugarte-Arenas v. Olson*, No. 25-cv-1721, ECF Nos. 12 and 13 (E.D. Wis. Dec. 8, 2025) (Griesbach, J.) (pending appeal) (petition denied).

This Court, as Petitioner notes, has recently ruled on this issue and adopted the Government's interpretation—that, in cases like this, 8 U.S.C. § 1225(b)(2)(A) governs for which detention is mandatory, as opposed to 8 U.S.C. § 1226, for which there is an opportunity to seek release on bond. ECF No. 11 at 2 (citing *Sosa-Vasquez*, 2026 WL 1831614).

---

[3]After this matter was fully briefed, the Fifth Circuit recently held in a published opinion that due process requires that the Government release detainees who have been held in immigration detention under 8 U.S.C. § 1225(b)(2)(A) for longer than ninety days. *Rodriguez v. Ortega*, ___ F.4th___, 2026 WL 1906557, at *16 (5th Cir. July 2, 2026); *see also* ECF No. 12 (Petitioner's notice of supplemental authority pursuant to Civil Local Rule 7(k)); ECF No. 13 (a copy of the *Ortega* decision). However, the Fifth Circuit in *Ortega* did not perform a statutory interpretation of § 1225(b)(2)(A), leaving untouched that portion of its earlier decision in *Buenrostro-Mendez*. As such, the *Ortega* decision does not affect the statutory interpretation portion of this Court's decision.

The Court appreciates that "Petitioner respectfully urges the Court to follow" the opposing line of "persuasive authority." ECF No. 11 at 3; ECF No. 11 at 2 (citing *Moniz*, 175 F.4th 61; *Raycraft*, 175 F.4th 713; and *Hernandez Alvarez*, 175 F.4th 1258). However, the Court rejects Petitioner's suggestion that it should reconsider its prior holding in *Sosa-Vasquez* based on these other circuits' decisions. "This Court is not bound by a decision of a court of appeals from another circuit." *United States v. Mitchell*, No. 03-40021, 2021 WL 462123, at *5 (C.D. Ill. Feb. 9, 2021). While the Court appreciates that the Seventh Circuit itself is split and that the courts in this District are as well, the Court was well-aware of those decisions, as well as three out-of-circuit appellate cases referenced by Petitioner, ECF No. 11 at 3 (citations omitted), prior to its decision in *Sosa-Vasquez*. There is, in other words, simply no reason for the Court to reverse course today. *See supra* note 3.

As such, because the record reflects that Petitioner is an undocumented noncitizen who entered the United States without inspection, ECF No. 9-1 at 1–3, the Court finds that Petitioner is an applicant for admission under § 1225(b)(2)(A) subject to mandatory detention. ECF No. 11 at 13–14 (conceding that he is an "applicant for admission" under § 1225(a)(1), as he is present in the U.S. and has not been admitted, but disputing that he is an alien "seeking admission"); *Sosa-Vasquez*, 2026 WL 1831614, at *4–6 (rejecting the argument that Petitioner makes here that § 1225(b)(2)(A)'s use of the phrase an alien "seeking admission" is meaningfully distinct from the "applicant for admission" phrase used elsewhere in the statue and, therefore, imposes a separate requirement that the Government must meet before a court can uphold a mandatory detention under 1225(b)(2)(A)). To the extent Petitioner argues that the Government is estopped from arguing that he is subject to detention under

§ 1225(b)(2)(A), "[a]s he was apprehended on a warrant of arrest under § 1226," ECF No. 11 at 13, the Court disagrees. *Sosa-Vasquez*, 2026 WL 1831614, at *6–7 (collecting cases establishing that estoppel does not apply to the Government). As such, the Court finds that there was no violation of the INA.

### 3.2    Petitioner's Detention Does Not Violate Due Process[4]

The Court now turns to the question of whether Petitioner's detention violates due process. The Court starts with the preliminary question of who bears the burden and what that burden is before turning to the merits of Petitioner's due process claim.

### 3.2.1   Burden on Petitioner

The Court disagrees with Petitioner that the Government bears the burden of showing that his detention is lawful by clear and convincing evidence. ECF No. 11 at 4. Although the Seventh Circuit has not yet weighed in on this topic in cases involving 8 U.S.C. § 1225(b)(2)(A), existing caselaw as to § 2241 cases in general suggests that Petitioner bears the

---

[4]The Court will not give weight to the *Ortega* decision, *see supra* note 3, even though it was made on due process grounds, for several reasons. First, assuming the Court were even bound to the *Ortega* ruling, which it is not, *Ortega* only requires a bond hearing in 8 U.S.C. § 1225(b)(2)(A) cases after 90 days in ICE custody, which is not yet the case here. *See supra* note 2 and accompanying text. Second, in *Ortega*, the petitioners each "illegally entered this country more than a decade ago" and had "no criminal history," unlike the facts of this case. 2026 WL 1906557, at *3, *7. Third, the Fifth Circuit's ruling identified a different liberty interest than the one the Seventh Circuit has identified, as discussed in more detail below. *Compare Ortega*, 2026 WL 1906557, at *14 *with Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (whereas the Fifth Circuit refers to "the interest in being free from physical detention," the Seventh Circuit notes that it is not "liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country."); *see also infra* Section 3.2.2. And, in any event, "[t]his Court is not bound by a decision of a court of appeals from another circuit." *United States v. Mitchell*, No. 03-40021, 2021 WL 462123, at *5 (C.D. Ill. Feb. 9, 2021).

burden of proving his detention is unlawful by a preponderance of the evidence. *Varela Martinez v. Warden of Miami Corr. Facility*, No. 3:25-CV-1057 DRL-SJF, 2026 WL 322742, at *2 (N.D. Ind. Feb. 6, 2026) (citing 28 U.S.C. § 2241; *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and *Flores v. Noem*, No. 9:25-CV-00307, 2026 WL 44238, at *1 (E.D. Tex. Jan 2, 2026)); *Noori v. Noem*, No. 3:26-CV-210-CCB-SJF, 2026 WL 1032086, at *1 (N.D. Ind. Feb. 20, 2026) (citing same); *see also Hernandez v. Olson*, No. 25-cv-1670-bhl, 2026 WL 161509, at *1 (E.D. Wis. Jan 21, 2026) (finding that petitioner was subject to mandatory detention under § 1225(b)(2)(A) as he "has not shown that he is being detained contrary to federal law").

Petitioner's argument that the Government bears the burden is not persuasive, as the cases on which Petitioner relies in support of his position, ECF No. 11 at 3–5, involve the burden imposed at bond hearings held under § 1226. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) (holding that the Government has the burden of proof at § 1226(a) bond hearings); *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020) (same); *Calvette Chirinos v. Olson*, No. 26-cv-369, 2026 WL 1724667, at *7 (E.D. Wis. June 12, 2026) (same); *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (same, except in the context of § 1226(c)); *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011) (same, except in context of § 1226(e)); *Cano-Ortega v. Olson*, No. 25-cv-1919, 2026 WL 1746898, at *12 (E.D. Wis. June 17, 2026) (ordering "bond hearing before an immigration judge under 8 U.S.C. § 1226(a), at which time the government must bear the burden of proving, by clear and convincing evidence, the petitioner's dangerousness or flight risk"); *Hussein v. Edwards*, 823 F. Supp. 3d 908, 913–914 (W.D. Wis. 2026) (same); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 277–78 (D. Mass. 2025) (same); and *Murcia v. Bondi*, No. 26-

cv-176-jdp, 2026 WL 710927, at *1 (W.D. Wis. Mar. 13, 2026) (same); *see also* ECF No. 1 at 12 (indeed, the petition before this very Court asks it to order a bond hearing under 8 U.S.C. § 1226(a), "*where* the Government shall bear" this burden (emphasis added)). Therefore, since the record does not reflect that any bond hearing has been held under § 1226, and the Court will not grant Petitioner's request for the same for the reasons set forth *supra* Section 3.1, the Court finds that the Government bears no such burden here.

That being the case, the Court applies the burden applicable to § 2241 petitions generally. *See, e.g.*, *Varela Martinez*, 2026 WL 322742, at *2 (citations omitted). That is, Petitioner must show that the Government committed a due process violation by a preponderance of evidence. As discussed below, *infra* Section 3.2.2, he does not make such a showing.[5]

### 3.2.2   Merits of Due Process Claim

Even if § 1225(b) governs his detention, Petitioner claims that he has had his due process rights violated, which requires a separate legal inquiry. ECF No. 1 at 10–11. His due process argument is two-fold. First, he argues "due process [does not] authorize the [G]overnment to detain [him] for a prolonged and indefinite period of time without a hearing to determine whether such detention is warranted based on danger posed to the community or flight risk." *Id*. (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)); ECF No. 11 at 7–10 (offering the legal grounds to hold a bond hearing to address such concerns). Second, "Respondents' detention of Picado-Perez [is] additionally violative of due process in that he was previously granted parole to pursue asylum but was re-detained without

---

[5]Given that the facts here present a legal question, the Court is skeptical that a different evidentiary standard, be it higher or lower, would change the analysis.

notice, without an individualized determination that detention was warranted, and without a meaningful opportunity to be heard regarding the basis of his re-detention." ECF No. 1 at 10; *id*. at 3 (alleging that, after he served the sentence in his State Case, he was re-detained by ICE and placed in custody of the Dodge County Jail without due process); ECF No. 11 at 10–12 (same). The Court addresses each of these arguments in turn.

Starting with Petitioner's first argument, the Court evaluates whether his prolonged detention amounts to a due process violation in light of the three-part test set forth in *Mathews*. 424 U.S. at 321. The Court must consider "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* Applying this standard to detention during removal proceedings in *Parra v. Perryman*, the Seventh Circuit defined the private interest not as "liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country[.]" 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in the original).

Here, the risk that current procedures will cause an erroneous deprivation of Petitioner's interest is minimal because, as explained *supra* Section 3.1, Petitioner's detention is mandatory. To the extent Petitioner proposes additional safeguards that borrow from the pretrial detention context in criminal cases, such as the individualized consideration of one's flight risk and dangerousness to the community, ECF No. 11 at 3–4, the Court declines to impose such safeguards, as such an approach "would contradict precedent and . . . constitute policymaking beyond the [C]ourt's

role." *Rodriguez v. Olson*, 814 F. Supp. 3d 945, 965 (N.D. Ill. 2026); *Demore v. Kim*, 538 U.S. 510, 527 (2003) (determining that a finding that an alien is a flight risk or is dangerous is not a prerequisite finding to the constitutional validity of mandatory detention during removal proceeding); *Gonzalez Trujillo v. Swearingen*, No. 2:26-cv-00344-JRO-MJD, 2026 WL 1741215, at *9 (S.D. Ind. June 17, 2026) (finding that the decision in *Demore* "settles the issue" of whether the Government must prove Petitioner is a flight risk or a danger to the community (citing *Demore*, 538 U.S. at 531)). Meanwhile, the Government has a "powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Parra*, 172 F.3d at 958. As such, balancing these factors, the Court finds that they all favor the Government.

"Other precedents like *Zadvydas v. Davis* do not cast doubt on the [constitutionality] of mandatory detention in these circumstances." *Rodriguez*, 814 F. Supp. 3d at 965 (citing 533 U.S. 678). After all, in *Zadvydas*, petitioners were being detained indefinitely *after* their removal had been ordered such that the "'detention's goal' was 'no longer practically attainable'" and continued detention "bore no 'reasonable relation to the purpose for which the individual was committed.'" *Id*. (quoting *Demore*, 538 U.S. at 527). Here, by contrast, Petitioner's "removal proceedings," as was the case in *Sosa-Vasquez*, "remain ongoing at this juncture and his detention has an end in sight." 2026 WL 1831614, at *9; ECF No. 1 at 11 (noting that he had a then-upcoming hearing in immigration court on June 8, 2026); ECF No. 9-2 (notice to appear for an upcoming hearing on August 4, 2026 in an immigration court in Chicago). Therefore, the concerns raised in *Zadvydas* are not present here. Even if this Court were to assume the facts and concerns of *Zadvydas* were implicated here—which they are not—the Supreme Court in *Zadvydas* determined that, under such circumstances,

detention for up to six months was presumptively constitutional, 533 U.S. at 701—and here, Petitioner, by his own accounting, has been detained by ICE pending his removal proceedings for less than three months. *See supra* note 2 and accompanying text.

The Court is likewise not persuaded by Petitioner's second due process argument that he did not have notice that he would be redetained (which, again, Petitioner suggests occurred once he was released from Dodge County Jail) on the basis that his parole was expired or terminated. ECF No. 11 at 10–12; ECF No. 1 at 3. As the Government notes, the docket reflects that a notice to appear in his removal proceedings was served on Petitioner in October 2024, which indicated that he would have to appear on April 27, 2026 because he was an "alien present in the United States who has not been admitted or paroled." ECF No. 9-1 at 1–3. Perhaps this language, at first glance, leaves it unclear whether his parole was expired or whether it was terminated for another reason; however, in reviewing the relevant law, the answer to that question is of no consequence in this case. On the one hand, 8 C.F.R. § 212.5(e)(1)(2) indicates that "parole shall be automatically terminated without written notice" when "the time for which parole was authorized" expires. As such, if parole had expired in December 2022 as Petitioner suggests, ECF No. 11 at 10, Petitioner was not entitled to written notice of the same. On the other hand, if his parole was terminated for a reason other than that it expired (and certain other conditions were met, which the Court will so assume for the sake of argument), he was entitled to written notice. 8 C.F.R. § 212.5(e)(2)(i). And, here, Petitioner received written notice in October 2024. ECF No. 10 at 13 ("When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified."

(quoting 8 C.F.R. § 212.5(e)(2)(i))); ECF No. 9-1 at 2 (showing date of service of October 25, 2024).[6] Therefore, to the extent Petitioner suggests the facts here are akin to those in *Caisa Telenchana v. Hermosillo*, in which another district court found that the Government had not given proper notice under § 212.5(e)(2)(i), the Court disagrees. No. 2:26-cv-00363-GJL, 2026 WL 696806, at *11 (W.D. Wash. Mar. 12, 2026). In that case, "[p]etitioners . . . allege[d] that they did not receive written notice prior to their re-detention following humanitarian parole" and the "[r]espondents submit[ted] no evidence or allegation to the contrary." *Id*. Here, by contrast, the Government has submitted contradictory evidence, as just noted. *See* ECF No. 9-1 at 1–3. As such, the Court is not persuaded by Petitioner's argument that he did not have notice that he would be redetained due to the expiration or termination of his parole.

For all these reasons, the Court finds that there has been no due process violation.

## 4.    CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases—which this Court may apply to § 2241 cases, *see* Rule 1(b), Rules Governing Section 2254 Cases—requires the Court to either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. Such a certificate should only be issued where the petitioner has

---

[6]Petitioner makes no argument challenging the constitutionality of 8 C.F.R. § 212.5(e)(2)(i) or the assumption that service was properly effectuated. *See generally* ECF No. 11. Rather, as suggested above, Petitioner's contention rests on whether there is evidence in the record that he received notice. *See id*. at 11 ("The record contains no documentation showing that Picado-Perez received notice of termination or that DHS made the requisite termination required by 8 C.F.R. § 212.5(e)(2)(i). This omission is dispositive."). As explained above, there is such evidence.

made a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Sosa-Vasquez*, 2026 WL 1831614, at *9 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, reasonable jurists could debate whether the petition should have been resolved in a different manner. Accordingly, the Court grants Petitioner a certificate of appealability.

**5.     CONCLUSION**

For the reasons set forth above, the Court will deny the petition for habeas corpus pursuant to § 2241 and dismiss this case. The petition's statutory claim will be denied with prejudice; the petition's due process claim will be denied without prejudice to the extent that Petitioner may have a due process claim materialize in the future related to his current detention. The Court will issue a certifiable of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Javier Addiel Picado-Perez's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, be and the same, is hereby **DENIED** as specified**;** Petitioner Javier Addiel Picado-Perez's statutory claim be and the same is hereby **DENIED with prejudice**; Petitioner Javier Addiel Picado-Perez's due process claim be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Javier Addiel Picado-Perez's petition be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of July, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge